Joshua H. Watson, SBN 238058
CLAYEO C. ARNOLD, APC
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829
Email: jwatson@justice4you.com

Attorneys for Plaintiffs
*DA, BA, JA, minors suing under pseudonym by and through Guardian ad Litem*

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTICT OF CALIFORNIA

| | |
|---|---|
| DA, BA, JA, minors acting by and through Guardian ad Litem,<br><br>Plaintiffs,<br><br>vs.<br><br>OROVILLE HOSPITAL, BI-COUNTY AMBULANCE, and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.:<br><br>COMPLAINT FOR DAMAGES AND INJUNCTION<br><br>*Jury Trial Demanded*<br><br>1. EMTALA VIOLATION (42 U.S.C. §1395dd)<br>2. WRONGFUL DEATH, MEDICAL NEGLIGENCE<br>3. VIOLATION OF BUSINESS AND PROFESSIONS CODE 17200<br>4. WRONGFUL DEATH, TORT |

Come now Plaintiffs DA, BA, JA, acting by and through their proposed Guardian ad Litem, who allege and complain as follows on information and belief, and who pray for relief from the court:

**PARTIES**

1. Plaintiffs DA, BA, JA (hereafter "PLAINTIFFS") are minors.  They are the children and

1
COMPLAINT FOR DAMAGES AND INJUNCTION

1  sole heirs of DECEDENT LESLIE ANN CRAMBLIT, also known as STACY BARBER
2  (hereafter "CRAMBLIT").  The children are named by their initials in this matter for the
3  sake of their privacy and safety.  This matter concerns in part the murder of Plaintiffs'
4  mother by persons alleged to be involved in an organized violent hate group.  In order to
5  provide some measure of privacy and protection for Plaintiffs, counsel files with
6  pseudonyms.  Those defendants who are not parties to the fourth cause of action have
7  already received notice of the plaintiff's name in a CCP §364 letter, and will receive an
8  attachment to this Complaint with the full names of the Plaintiffs.  However, as for those
9  defendants who shall be named as being more directly involved in the murder of the
10 Plaintiff's mother, Plaintiff seeks this protection.

2. DEFENDANTS, DOES 1 through 20, and each of them are and were at all times relevant to this Complaint medical providers who treated CRAMBLIT in the acts and omissions giving rise to this litigation.

3. DEFENDANT OROVILLE HOSPITAL is and was at all relevant times a private hospital in California, located in Butte County, an area within the jurisdiction of this Court. DEFENDANT OROVILLE HOSPITAL employed staff (including but not limited to any relevant nurses, physician assistants, radiology technicians, phlebotomists, nursing assistants, and non-licensed physician trainees, interns, or residents) who treated CRAMBLIT.  By virtue of such employment and control, DEFENDANT OROVILLE HOSPITAL is liable for the acts and omissions of such persons in this matter.

4. The names and capacity of defendants, and each of them, sued as DOES 1 through 25, inclusive, (hereafter "DOES" and included in references to "Defendants") are unknown to plaintiff at this time who, therefore, sues these defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each of the defendants designated as a DOE is legally responsible for the events and happenings referred to in this Complaint, and directly caused injury and damages to Plaintiff.  Plaintiff will amend this Complaint to reflect the true identities of DOE defendants upon their discovery.

5. Defendants, DOES, and each of them, were at all times mentioned, the agents,

representatives, employees, partners, of each of the other defendants and were at all times mentioned acting within the course and scope of said agency, representation, employment, partnership, joint venture or relationship stated therein, and were acting with the consent and knowledge of each of the other defendants.

## JURISDICTION AND VENUE

6. The acts and omissions giving rise to this litigation occurred in the jurisdictional area of this Court.

7. Subject matter jurisdiction arises due to a Federal question arising from the first cause of action for violation of Federal patient dumping laws, including 42 U.S.C. §1395dd.

8. Within one year of the medical negligence alleged herein, Plaintiff gave notice to all Defendants of the claims herein pursuant to and in compliance with California Code of Civil Procedure section 364. Such notice was provided on November 17, 2016. The alleged malpractice led to the patient's death on November 22, 2015. This complaint is filed within 90 days of the notice, and within 90 days after the one year anniversary of CRAMBLIT'S death. *See, Woods v. Young* 53 Cal.3d 315 (1991).

9. Plaintiffs made a pre-litigation effort to resolve this dispute via the foregoing correspondence to Defendants, which included an invitation to explore settlement options that would preclude the necessity of filing a legal action. Defendants did not respond in any way indicating a willingness to explore pre-litigation resolution, thereby necessitating this suit for the benefit of the minor plaintiffs and, as for injunctive relief, for the benefit of the general population of Butte County, including persons subject to the risk or actual occurrence of being injured due to failure by Defendants to appropriately respond to patients presenting with signs of domestic violence.

## GENERAL FACTUAL ALLEGATIONS

10. DEFENDANTS, DOES 1 to 25, and each of them were at all relevant times medical providers who had accepted CRAMBLIT as their patient. Each had duties of care and loyalty to Plaintiff at all relevant times, including but not limited to practicing within the standard of care, obtaining legitimate informed consent, making appropriate and timely

1   referrals, and providing appropriate staff, training, facilities, equipment, and personnel.
2   All Defendants who were or operated medical facilities had the obligation to provide for
3   appropriate employee and provider management, retention, supervision, and discharge.
4   11. On or about November 17, 2015, CRAMBLIT called for emergency services, reported
5   that she was fearful of her life, and indicated that person(s) intended to hurt her. BI-
6   COUNTY AMBULANCE was dispatched her location, and found her bruised and hiding
7   in a ditch. BI-COUNTY AMBULANCE determined that CRAMBLIT suffered from
8   psychiatric problems that affected her globally. Ambulance personnel marked "not
9   applicable" in records concerning CRAMBLIT's alcohol or drug use. However,
10  Ambulance personnel also wrote a narrative that stated that the patient had used alcohol
11  and methamphetamine earlier in the day.
12. At the time of her presentation to BI-COUNTY AMBULANCE, CRAMBLIT had
    symptoms obvious to any minimally trained medical professional as having emergency
    medical needs including but not limited to such arising from domestic abuse, severe
    anxiety, dual diagnosis, and a psychiatric state of being a potential danger to herself.
    Ambulance personnel determined that CRAMBLIT was suffering from an anxiety attack,
    and transported her to OROVILLE HOSPITAL.
13. CRAMBLIT was present in the Emergency Department of OROVILLE HOSPITAL for
    hours, as evidenced by her panicked calls for help to family members. Unfortunately, her
    calls went to voicemail and her family was not aware of CRAMBLIT's dangerous
    condition. However, the voicemails evidence that CRAMBLIT was fearful of severe
    domestic violence. CRAMBLIT had been kidnapped by a relation akin to a boyfriend by
    gunpoint and transported against to her will to a residence near the ditch in which she was
    found by BI-COUNTY AMBULANCE on threat that failure to comply would lead to the
    murder of her children. CRAMBLIT escaped and sought assistance, leading to her
    transport to OROVILLE HOSPITAL and her presentation at OROVILLE HOSPITAL in
    a manner that was obvious to any reasonable medical professional as having emergency
    medical needs including but not limited to such arising from domestic abuse, severe

anxiety, dual diagnosis, and a psychiatric state of being a potential danger to herself.

14. OROVILLE HOSPITAL is and at all times was a facility subject to the Federal EMTLA statute, including but not limited to the provisions of 42 U.S.C. §1395dd.  This statute required OROVILLE HOSPITAL to provide CRAMBLIT with "appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition …exists."  The statute also required OROVILLE HPSPITAL to provide CRAMBLIT with stabilization of such emergency conditions upon their detection.  The statute required OROVILLE HOSPITAL to promptly perform not just a trivial intake, but also an appropriate screening for emergency medical condition.  Such emergency medical conditions include but are not limited to those falling within the definition of 42 U.S.C. §1395dd(e), including but not limited to a condition manifesting itself by acute symptoms of sufficient severity such that the absence of immediate medical attention could reasonably be expected to result in placing the health of the patient in serious jeopardy, to cause serious impairment to bodily functions, or to any bodily organ or part.

15. Harm from domestic violence is a recognized emergency condition.  This is reflected in many sources, including but not limited to the Code of Ethics for Emergency Physicians promulgated by the American College of Emergency Physicians, which states in part "The emergency physician has an ethical duty to diagnose, treat, and properly refer suspected victims of abuse and neglect, including domestic partners, minors, and dependent adults, and to report domestic violence to appropriate authorities as required or permitted or required by law."  *See,* https://www.acep.org/Clinical---Practice-Management/Code-of-Ethics-for-Emergency-Physicians/.  These same standards also provide, "Hospitals have a duty to provide adequate numbers of trained security personnel to assure a safe environment. Ensuring safety may mean that patients who present a high risk of violence will lose some autonomy as they are restrained physically or chemically."  *Ibid*.  The status of domestic violence as a medical emergency is also

COMPLAINT FOR DAMAGES AND INJUNCTION

1
2
3
4
5
6
7
8
9
10
11
12

reflected by publications by Stanford School of Medicine, including but not limited the Stanford Medicine webpage on California State Law concerning domestic violence screening, which states in part that licensed hospitals must have written domestic violence screening systems and that Joint Commission standards require identification of "possible victims" of abuse.  *See,* http://domesticabuse.stanford.edu/screening/law.html.  California Health and Safety Code § 1259.5 requires every acute care hospital and similar facility to establish written guidelines to use routine screening to identify domestic abuse, document injuries from domestic abuse, educate staff on procedures for such, advising patients on available crisis intervention services, and provide patients who exhibit signs of abuse with referrals.  The foregoing reflect a standard of care, industrial and professional practice, and legal obligation to affirmatively screen emergency patients, including those in a position such as CRAMBLIT, for domestic violence issues.

16. Despite being present at OROVILLE HOSPITAL for hours, CRAMBLIT was never provided with any Medical Screening Exam as required by EMTALA (42 U.S.C. §1395dd).  This is reflected in, among other things, the sole record Oroville Hospital was able to produce to the family of CRAMBLIT after her death.  This record is entitled "Triage Registration Information."  It indicates that the patient arrived at 1715 (5:15 pm), and was noted to have a chief complaint of "Anxious, pills, meth, vodka."  The form includes a line for  medical professional to sign that triage has been completed.  It is unsigned on the form for CRAMBLIT.  The form includes a portion entitled "Medical Screening Exam Finished" that is used to document EMTALA compliance.  This portion of the form is left completely unexecuted, reflecting that CRAMBLIT never received a medical screening exam.  A true and correct depiction of the Triage Registration Information form for CRAMBLIT is below in Figure 1.  (Note that the reference to Stacy Barber refers to CRAMBLIT, who used a pseudonym in an effort to hide from the person who ultimately murdered her.)

6
COMPLAINT FOR DAMAGES AND INJUNCTION

Figure 1.  Triage Registration Form

17. OROVILLE HOSPITAL, despite an impassioned and in-person demand for disclosure of records concerning CRAMBLIT by CRAMBLIT'S family was unable to produce any record for CRAMBLIT other than that in Figure 1.  Even that record was not formally stored, but was said by OROVILLE HOSPITAL to have been found crammed in a desk drawer or similar location.  When CRAMBLIT'S family requested such documentation, OROVILLE HOSPITAL stated initially that it did not have any records concerning CRAMBLIT under her own name or under the pseudonym CRAMBLIT used in an attempt to hide from her abuser.  OROVILLE HOSPITAL did not even have a copy of the BI-COUNTY AMBULANCE medical records for CRAMBLIT'S trip to the hospital.  At the time CRAMBLIT's family asked OROVILLE HOSPITAL for records concerning CRAMBLIT, the hospital asked CRAMBLIT'S family to give the hospital a copy of the ambulance records.

18. In the ordinary course of medicine within the applicable standards of care and compliance with EMTALA, given the course of CRAMPLIT'S visit to the emergency department, OROVILLE HOSPITAL should have had extensive documentation concerning the patient, including but not limited to a completed triage and medical

screening exam form, nurse flowsheets, nurse intake notes, physician intake notes, measurements of vital signs, laboratory tests, photographs of signs of abuse, history and physical notes, referral requests, consult reports, a 5150/psychiatric screening, a patient data sheet, prescription records, intake and ambulance records, and other records associated with emergency department care and assessment.

19. Such records are created by hospitals in the ordinary course of business as business records such that their absence with respect to CRAMBLIT is evidence that OROVILLE HOSPITAL did not engage in such care and assessment.

20. On information and belief, Defendants allowed and required CRAMBLIT to be located in an unsecured area for an extended time, such that her abuser was able to find her and force her to leave by physical and/or psychological coercion.  Her abuser had earlier threatened to murder CRAMBLIT'S children, had kidnapped CRAMBLIT at gunpoint, and had located her at OROVILLE HOSPITAL despite her escape and plea for help, making her highly susceptible to such coercion.

21. Had Defendants conducted appropriate screenings of CRAMBLIT, they would have determined that she was at high risk for such abuse, and recognized her need for emergency crisis intervention services, including but not limited to law enforcement referral, WIC 5150 evaluation, seclusion, battered woman services, and counseling referral.  It is a shameful and shocking indictment of Defendants, and OROVILLE HOSPITAL in particular, that CRAMBLIT could be found bruised in a ditch after a call for emergency services, be transported to a hospital reporting abuse and a fear for her safety, be taken into the emergency room with comorbidities of anxiety, substance abuse, and domestic abuse, and not receive a medical screening exam and appropriate referrals. CRAMBLIT, despite being victimized and in a highly vulnerable position, did everything she could have done to save herself and got to what should have been a place of safety.

22. As a direct and proximate result of Defendants actions and inactions alleged herein, CRAMBLIT's abuser murdered her after coercing her out of the hospital.  OROVILLE HOSPITAL was so profoundly negligent that it did not even report her kidnapping or

disappearance to authorities.

23. The foregoing conduct was so far below the applicable standards of care as to shock the conscience. OROVILLE HOSPITAL'S conduct was malicious and oppressive in its wholescale disregard of CRAMBLIT'S rights as a patient and the hospital's obligation to provide basic emergency screening, care, and referrals. Plaintiffs reserve the right to file a motion for leave to seek punitive damages pursuant to California Code of Civil Procedure §425.13.

**FIRST CAUSE OF ACTION: VIOLATION OF EMTALA (42 U.S.C. 1395dd)**

**BY ALL PLAINTIFFS AGAINST OROVILLE HOSPITAL AND DOES 1 to 10**

24. All prior paragraphs are incorporated by reference as though stated fully here.

25. OROVILLE HOSPITAL, DOES 1 to 10, and each of them (hereafter "EMTALA DEFENDANTS") are and at all times were subject to the requirements of EMTALA, including but not limited to those at 42 U.S.C. 1395dd.

26. EMTALA DEFENDANTS failed to provide CRAMBLIT with appropriate medical screening examination within the capability of its emergency department. This is evidenced by, among other things, the fact that EMTALA DEFENDANTS failed to conduct any medical screening of CRAMBLIT whatsoever.

27. Alternatively, EMTALA DEFENDANTS conducted an ineffective medical screening examination of CRAMBLIT and detected CRAMBLIT's emergency condition related to her presenting symptoms, but failed to providing necessary stabilizing treatment, referrals, and transfer as required by EMTALA.

28. As a direct and proximate result of such failures, CRAMBLIT failed to receive the treatment necessary for her condition, and died as alleged herein. Her death was an entirely foreseeable consequence of the failure to provide screening and stabilization as required by EMTALA.

29. Due to such failures, Plaintiffs suffered the loss of their mother, giving rise to injury and damages. (*See*, 42 U.S.C. 1395dd(d)(2)(A).)

30. Plaintiffs seek monetary damages as permitted by their injury.

31. Plaintiffs seek equitable relief requiring EMTALA DEFENDANTS to alter their policies and practices so as to come into compliance with the letter and spirit of EMTALA so as to avoid similar injury to other victims of domestic violence in the areas served by OROVILLE HOSPITAL. (*See*, 42 U.S.C. 1395dd(d)(2)(A).)

## SECOND CAUSE OF ACTION: WRONGFUL DEATH (MEDICAL NEGLIGENCE) BY ALL PLAINTIFFS AGAINST OROVILLE HOSPITAL, BI-COUNTY AMBULANCE, AND DOES 1 to 20

32. All prior paragraphs are incorporated by reference as though stated fully here.

33. DEFENDANTS, DOES 1 to 20, and each of them, (hereafter MALPRACTICE DEFENDANTS) were medical providers to CRAMBLIT at all times relevant to this Complaint.

34. MALPRACTICE DEFENDANTS had duties of care and loyalty to CRAMBLIT, including but not limited to the duty to use the level of skill, knowledge and care in diagnosis and treatment that other reasonably careful practitioners would use in the same or similar circumstances.

35. Those defendants who were or operated medical facilities also had the duty to exercise reasonable control over its facilities and to reasonably screen the competency of its medical staff to insure the adequacy of medical care rendered to patients at its facility and to provide and maintain high standards of professional work. (*Elam v College Park Hospital* (1982) 132 Cal.App.3d 332; *Rhee v El Camino Hospital District* (1988) 201 Cal.App.3d 477.)

36. Those defendants who were emergency medical response ambulance staff or whose liability arises from the negligent conduct by such employees had a duty to provide services in a manner that was not grossly negligent or in bad faith. (*See*, *e.g.,* California Health and Safety Code §1799.107.)

37. MALPRACTICE DEFENDANTS breached such duties as alleged herein, including but not limited to: failing to evaluate, document, and refer CRAMBLIT in light of her obvious emergency medical needs associated with threat of harm by others, susceptibility

to further abuse, active flight from harm, physical signs of abuse, pleas for help, and clinical presentation.  Due to the profound and clear signs of danger, such breaches of duty were grossly negligent and/or made in bad faith to the degree they were not the result of disregard of the plain clinical presentation.

38. As to BI-COUNTY AMBULANCE, Plaintiffs renew their invitation for BI-COUNTY AMBULANCE to meet and confer to provide any indication that this party is not appropriately named herein.  In the absence of such meet and confer, Plaintiffs allege on information and belief that BI-COUNTY AMBULANCE'S negligence includes but is not limited to failure to appropriately transfer CRAMBLIT into OROVILLE HOSPITAL'S care system, failure to document and communicate the extent and nature of CRAMBLIT'S injuries, symptoms, and distress, and failure to refer or counsel the patient as required by the relevant standards of care.  This includes communications with the patient, with the hospital, with dispatch, with 911, with law enforcement, and with the patient's emergency contacts.  The gross negligence of BI-COUNTY AMBULANCE appears, *inter alia*, in its low-key response to finding a bruised woman in a ditch asking from rescue from persons intent on hurting her, coupled with the apparent failure to alert anyone at all as to the plainly emergent circumstances.

39. As a direct and proximate result of such breaches, CRAMBLIT died, and PLAINTIFFS suffered injury and attendant damages including both economic and non-economic wrongful death damages as set forth in California Civil Jury Instruction No. 3921, to wit:
    a. Economic Damages: Loss of financial support, loss of gifts or benefits, funeral and burial expenses, and reasonable value of household services, and all other permissible losses in this category.
    b. Non-economic Damages: Loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, and all other permissible losses in this category.

//
//

## THIRD CAUSE OF ACTION:

## VIOLATION OF CAL. BUS. & PROF. CODE §17200 [UNLAWFUL PRACTICES] BY ALL PLAINTIFFS AGAINST OROVILLE HOSPITAL AND DOES 1 to 10

40. All prior paragraphs are incorporated by reference as though stated fully here.

41. On information and belief, Plaintiffs allege that the actions of OROVILLE HOSPITAL, DOES 1 to 10, and each of them reflect an ongoing pattern and practice of disregarding the needs of women presenting with risk of domestic violence. A 2016 self-assessment by Oroville Hospital published online recognizes that the facility could improve with respect to domestic violence services. The assessment incorrectly lumps domestic violence in with homelessness problems, apparently confusing domestic violence as a result of homelessness and particularized problem within the homeless community. Oroville Hospital maintains an online "Health Library" that purports to teach patients and the relevant community about important health issues. The Health Library recognizes that it is dangerous to live with an abuser, and that violence becomes more severe and frequent over time. (http://www.orovillehospital.com/health-library/health-library-home?type=7&parm1=2340&parm2=1&doc=true) The library warns of the signs of domestic violence. (http://www.orovillehospital.com/health-library/health-library-home?parm1=2579&parm2=1&doc=true) The library implores victims to "talk with a domestic abuse counselor or another therapist. Call 1-800-799- SAFE to speak to a representative 24/7 from the National Domestic Abuse Hotline. If you're in immediate danger, call 911." Yet, all available information indicates that OROVILLE HOSPITAL, DOES 1 to 10, and each of them failed to provide any such information or even basic screening to CRAMLIT – a bruised woman found in a ditch asking for help from people who wanted to hurt her. Absent a systemic problem, there is no plausible way that this occurred.

42. The systemic failures included but are not limited to a failure to comply with EMTALA and the California State statutes alleged herein.

43. As a direct and proximate result of the foregoing, PLAINTIFFS suffered the specific

12
COMPLAINT FOR DAMAGES AND INJUNCTION

injuries and losses alleged herein, including but not limited to the loss of their mother. This is an actual injury in fact giving rise to seek equitable relief under Cal. Bus. & Prof. Code §17200.

44. Plaintiffs seek equitable relief requiring EMTALA DEFENDANTS to alter their policies and practices so as to come into compliance with the letter and spirit of EMTALA so as to avoid similar injury to other victims of domestic violence in the areas served by OROVILLE HOSPITAL.  (*See*, 42 U.S.C. 1395dd(d)(2)(A).)

45. Plaintiffs seek an award of attorney fees with respect to this cause of action pursuant to California Code of Civil Procedure § 1021.5.

## FOURTH CAUSE OF ACTION: WRONGFUL DEATH - TORT
## BY ALL PLAINTIFFS AGAINST DOES 21-25

46. All prior paragraphs are incorporated by reference as though stated fully here.

47. The Defendants named as DOE defendants to this cause of action are so identified due to the safety concerns set forth at the outset of the Complaint.  The statute of limitations period for these plaintiffs has not yet run, and this Complaint may be amended to name them at an appropriate time after taking appropriate care for the plaintiffs' safety.

48. Defendant DOE 21 murdered CRAMLIT as alleged herein.  The identity of DOE 21 is ascertainable from media accounts widely available online and criminal court records concerning the CRAMLIT murder.

49. Defendants DOES 22-25 negligently empowered DOE 21 to accomplish the murder of CRAMLIT.  Such negligence included, on the part of DOES 22-23, ownership and control of a property at which CRAMLIT and DOE 21 dwelled in the days before her death.  DOES 22-23 allowed DOE 21 to use their home and surrounding property, and knew or should have known that DOE 21 was abusing CRAMLIT physically and controlled her movements.  DOES 22-23 had a duty under the law to manage their property in such a fashion as to preclude such kidnapping, abuse, and murder on their property.  They breached that duty by failing to eject DOE 21 from their premises, by failing to alert authorities, or otherwise taking action to prevent the use of their premises

for the unlawful purposes of DOE 21 as directed at CRAMLIT.

50. DOE 25 took other action negligently, intentionally or recklessly to assist DOE 21 in his criminal enterprise in a manner leading to the death of CRAMLIT.

51. As a direct and proximate result of such breaches, CRAMBLIT died, and PLAINTIFFS suffered injury and attendant damages including both economic and non-economic wrongful death damages as set forth in California Civil Jury Instruction No. 3921, to wit:

   a. Economic Damages: Loss of financial support, loss of gifts or benefits, funeral and burial expenses, and reasonable value of household services, and all other permissible losses in this category.

   b. Non-economic Damages: Loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, and all other permissible losses in this category.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray judgment against Defendants, DOES 1 to 25, and each of them, as hereinafter follows:

1. For non-economic damages according to proof;
2. For economic damages according to proof;
3. For costs of suit;
4. For equitable relief requiring defendants to comply with all EMTALA obligations on an ongoing basis, including with respect to domestic violence issues, and to take corrective action to address unlawful practices that inhibit appropriate care and referrals for defendants' patients who are potential victims of domestic violence;
4. As for Bus. & Prof. Code § 17200 claims, an award of attorney fees;
5. For pre-judgment interest as may be allowed by law;
6. For such other and further relief as the court deems proper.

For the purposes of due process and default judgment regarding claims not characterized as personal injury, Plaintiffs set forth a prayer of not more than $6,000,000 (Six Million US

Dollars) understanding this amount be arrived at purely for reservation of rights for these purposes and is subject to change, including increase, during litigation of this matter.

Dated: February 15, 2017                         CLAYEO C. ARNOLD, APC

                                        By:    /s/ Joshua H. Watson
                                               Joshua H. Watson
                                               *Attorney for the Plaintiffs*

COMPLAINT FOR DAMAGES AND INJUNCTION