# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.A., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>JONNYRAE MOUNTAIN WITT,<br><br>    Defendant. | Nos. 2:17-CV-0337-MCE-DMC<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiffs, who are proceeding with retained counsel, bring this civil action. Pending before the Court is Plaintiffs' motion, ECF No. 57, for entry of a default judgment as against Defendant Jonnyrae Mountain Witt.

## I. PLAINTIFFS' ALLEGATIONS

Plaintiffs are three minor children of decedent Leslie Ann Cramblit, also known as Stacy Barber, appearing through guardian ad litem, as well as the Estate of Leslie Cramblit. This action proceeds on Plaintiffs' original complaint. See ECF No. 1. Plaintiffs named the following as defendants: (1) Oroville Hospital; (2) Bi-County Ambulance. On April 20, 2018, the District Judge consolidated this matter with D.A., et al. v. Witt, et al., No. 2:17-CV-2478-KJM-DB. See ECF No. 27. The consolidation resulted in the addition of the following defendants: (1) Jonnyrae Mountain Witt; (2) Kenneth Chill; (3) Colleen Chill; (4) Gina Chill; (5) Wesley Chill; and (6)

1

| 1 | Michael Chill.

Plaintiffs offer the following summary of the facts of the consolidated action:

Plaintiffs in this case are minors, currently aged from 9 to 13. Their mother was killed 11/22/2015, with the consequence that these children grew up without her from a very young age.

Leslie Cramblit had earned a trade degree in medical assistance work; she was focused on raising her children but intended to go to work when they got a little older. Deposition of Beverly Cramblit, 21:5-22:22. Unfortunately, Ms. Cramblit had become involved in an abusive relationship with Defendant Jonnyrae Mountain Witt. She tried to break it off, and moved in with her sister, Beverly. The two were both single mothers, and intended to run a household together, but Mr. Witt used threats to keep himself in Leslie Cramblit's life. Deposition of Beverly Cramblit, 22:25-27:13. This escalated to Mr. Witt driving aggressively by the Cramblit home, displaying a handgun. On November 16, 2015, Ms. Cramblit left with Mr. Witt after such an incident. Deposition of Beverly Cramblit, 27:14-30:2. The two traveled to a fairly large property owned by the Chill family in rural Oroville. The Chills rented trailers on the property to various tenants and were under the impression that Mr. Witt and Ms. Cramblit were there to visit a tenant. Deposition of Michael Chill, 33:15-35:11. Michael Chill, who acted as a property manager, recognized Ms. Cramblit from shared social circles. Deposition of Michael Chill, 33:20-34:15; 69:10-70:7. His wife, Gena Chill, knew Mr. Witt from some 15 years before. Deposition of Gena Chill 11:14-12:2. Because of cold weather, the Chills allowed Ms. Cramblit to stay in a converted garage at the Chill's house, and she was joined by Mr. Witt. Deposition of Michael Chill, 40:19-24; 44:8-18; 45:18-24.

On November 17, 2015, the day after Ms. Cramblit arrived, she called 911. Ambulance personnel responded to the Chill residence. They documented that although Ms. Cramblit told 911 that she was fearful of being hurt, she told them she was suffering anxiety after using methamphetamine and alcohol. They transported her to Oroville Hospital. Ms. Cramblit used an alias to obtain treatment. Deposition of Eric Miller, 10:1-8; 14:2-12; 18:17-21; 23:5-10; 26:9-24.

At the hospital, Ms. Cramblit again provided an alias for her name. Deposition of Kimberly O'Dell RN, 18:21-19:13. Deposition of Meghan Shorter MD, 50:5-13. Because hospital staff determined Ms. Cramblit looked calm on arrival, they placed her in the waiting room to await triage. Deposition of Kimberly O'Dell RN, 25:4-26:25; 61:3-62:23.

There had been no report to police that Ms. Cramblit was pressured to leave with Mr. Witt. Deposition of Beverly Cramblit, 80:10-15. It may be that Ms. Cramblit's reluctance to provide her legal name and ask for police was related to a Superior Court case in which she was a defendant who failed to appear about two months earlier. Watson Declaration, Exhibit of Sacramento Superior Court Case Docket. In any event, there is no evidence that Ms. Cramblit informed any of her care providers of her actual situation, which informs any considerations of apportionment of fault as to former healthcare defendants.

On the same day that Ms. Cramblit was at the hospital, Michael Chill suffered an infection in his leg, for which he sought treatment at Oroville Hospital's emergency department. Deposition of Michael Chill, 22:1-13. He was taken to the hospital by his wife and one of their tenants. Id at 22:14-25; 24:8-14; 25:3-8. (Counsel for Plaintiffs obtained a hospital

> record of admissions to the emergency department, and it appears to corroborate Mr. Chill's testimony on these points. Watson Declaration.) The Chills encountered Ms. Cramblit in the emergency department waiting area, where she was trying to charge a cell phone. Ms. Cramblit asked Ms. Chill if she could share a charger, which Ms. Chill testified she provided before going into the treatment area with Mr. Chill. Deposition of Gena Chill, 31:16-32:18. Ms. Cramblit is known to have placed a call to her family from the emergency department. Watson Declaration. Later, Ms. Cramblit returned to the Chill property with Ms. Chill. Deposition of Gena Chill, 32:19-33:6.
>
> Five days then passed until November 22, 2015. Michael Chill returned home from the hospital. Ms. Cramblit and Mr. Witt were still at the property. Ms. Cramblit approached Mr. Chill asking where Mr. Witt was. Mr. Chill did not know but let Ms. Cramblit use the garage/bedroom to get out of the cold. Deposition of Michael Chill, 70:8-71:12. Later that night, Mr. Chill heard arguing involving Ms. Cramblit and Mr. Witt. He told them to keep it down, but then returned to his bed to continue recovering from the hospital. Deposition of Michael Chill, 73:20-74:17. At about 4 am that night, Mr. Chill heard a loud sound that turned out to be a gunshot. Mr. Witt had shot and killed Ms. Cramblit. Mr. Chill called the police. Deposition of Michael Chill, 74:18-76:9.
> Mr. Witt was convicted of second-degree murder for shooting Ms. Cramblit. *See,* Complaint in 2:17-cv-02478 at ECF Docket No. 1 in that case file. *See also,* Trial Transcript, 637:18-638:22.
>
> ECF No. 57-1, pgs. 3-5.

## II. PROCEDURAL HISTORY

Process was returned executed as to Defendant Witt on March 28, 2018. See ECF No. 14 in No. 2:17-CV-2478-KJM-DB. On April 20, 2018 District Judge England ordered the consolidation of case No. 2:17-CV-2478-KJM-DB with case No. 2:17-CV-00337-MCE-CMK. See ECF No. 27 in case No. 2:17-CV-00337-MCE-CMK. Notice of the April 20, 2018 Consolidation Order was served on Defendant Witt on the same date as the Order. See id. On October 24, 2019, following consolidation, Plaintiffs requested the entry of default as to Defendant Witt based on his failure to respond to the complaint in No. 2:17-CV-2478-KJM-DB. See ECF No 38. The Clerk of the Court entered Defendant Witt's default the next day. See ECF No. 39. On August 21, 2020, the District Judge approved settlements with all defendants except Witt. See ECF No. 55. All defendants except Witt were dismissed from the action and Plaintiffs were directed to initiate default judgment prove-up proceedings against Defendant Witt, who is the only remaining defendant. See id.

3

Plaintiff now seeks a default judgement against Defendant Witt awarding damages in favor of each of the each of the three minor children of decedent.

### III.  DISCUSSION

Whether to grant or deny default judgment is within the discretion of the Court. See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  In exercising this discretion, the Court considers the following factors:  (1) the possibility of prejudice to the plaintiff if relief is denied; (2) the substantive merits of plaintiff's claims; (3) the sufficiency of the claims raised in the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits when reasonably possible.  See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir 1986).  Regarding the last factor, a decision on the merits is impractical, if not impossible, where defendants refuse to defend.  See Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

Where a defendant has failed to respond to the complaint, the Court presumes that all well-pleaded factual allegations relating to liability are true.  See Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam); Danning v. Lavine, 572 F.2d 1386 (9th Cir. 1978); Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam); see also Discovery Communications, Inc. v. Animal Planet, Inc., 172 F. Supp. 2d 1282, 1288 (C.D. Cal. 2001).  Therefore, when determining liability, a defendant's default functions as an admission of the plaintiff's well-pleaded allegations of fact.  See Panning v. Lavine, 572 F.2d 1386 (9th Cir. 1978).  However, the Court has the responsibility of determining whether the facts alleged in the complaint state a claim which can support the judgment.  See Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978).  For this reason, the District Court does not abuse its discretion in denying default judgment where the factual allegations as to liability lack merit.  See Aldabe, 616 F.2d at 1092-93.

While factual allegations concerning liability are deemed admitted upon a defendant's default, the Court does not presume that any factual allegations relating to the amount of damages suffered are true.  See Geddes, 559 F.2d at 560.  The Court must ensure that the

amount of damages awarded is reasonable and demonstrated by the evidence. See id. In discharging its responsibilities, the Court may conduct such hearings and make such orders as it deems necessary. See Fed. R. Civ. P. 55(b)(2). In assessing damages, the Court must review the facts of record, requesting more information if necessary, to establish the amount to which the plaintiff is lawfully entitled. See Pope v. United States, 323 U.S. 1 (1944).

Where actual damages are not proved, it may be appropriate in some cases to award nominal damages to vindicate the deprivation of certain "absolute" rights. See Cummings v. Connell, 402 F.3d 936, 942 (9th Cir. 2005). Nominal damages may be appropriate under California law for the torts of trespass, see Consterisan v. Tejon Ranch Co., 255 Cal.App.2d 57, 60 (5th Dist. 1967), assault, see Liljefelt v. Blum, 33 Cal.App.721 (1st Dist. 1917) (per curiam), loss of publicity, see Ericson v. Playgirl, Inc., 73 Cal.App.3d 850, 859 (2nd Dist. 1977), as well as breach of contract, see id.. As the term implies, nominal damages are defined as a mere token or trifle. See Cummings, 402 F.3d at 943.

Here, Defendant Witt has failed to respond to Plaintiff's complaint. Therefore, the well-pleaded factual allegations contained in the complaints are deemed true. Specifically, the allegation that Defendant Witt murdered Ms. Cramblit is presumed true. Additionally, the allegations that Defendant Witt murdered Ms. Cramblit and that Plaintiffs suffered damages as a result satisfy the elements of the tort of wrongful death under California law. See Cal. Code. Civ. P. 377.60; see also Lattimore v. Dickey, 239 Cal. App. 4th 959, 968 (2015). Given the District Judge's direction following dismissal of all other defendants that Plaintiffs initiate default prove-up proceedings against Defendant Witt, the Court assumes supplemental jurisdiction over this state law claim notwithstanding dismissal of the defendants against whom federal claims were pleaded.

As detailed below, Plaintiff has satisfied the threshold criteria for entry of a default judgment against Defendant Witt.

**A.     The *Eitel* Factors**

    1.     Possibility of Prejudice to Plaintiff if Relief is Denied

Absent entry of default judgment, Plaintiffs are prejudiced by Defendant's failure

to appear and defend. See Aussieker v. Staccato Props., LLC, 2019 U.S. Dist. Lexis 221053, *4 (E.D. Cal. 2019); Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014). This factor weighs in favor of entering default judgment here, where the Plaintiffs claims would remain suspended without response absent entry of a default judgement.

### 2. The Merits and Sufficiency of Plaintiff's Claims

The second and third Eitel factors are interrelated and should be considered together. See Aussieker, 2019 U.S. Dist. Lexis 221053 at *4. These factors ask whether the plaintiff has stated a claim upon which relief can be granted. See id. Here, Plaintiffs' alleges that Defendant Witt murdered Ms. Cramblit and that Plaintiffs suffered damages as a result state a claim for wrongful death under California law. These claims are substantives meritorious and warrant relief, and as such satisfy these two Eitel factors.

### 3. The Sum of Money at Stake

The Court considers the amount of money at stake in the context of the seriousness of the conduct alleged. See PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1176-77. Here, Plaintiffs seek by way of default judgment an award totaling $3,000,000.00 -- $1,000,000.00 for each of the three minor children of decedent Cramblit. Given the seriousness of the conduct alleged – murder – this amount is does not weigh against entering default judgment.

However, satisfying the "amount" consideration, for purposes of this Eitel factor, should not be mistaken for satisfactorily demonstrating any or all, of the claimed damages. As discussed below, the sum ultimately awarded in a default judgement is subject to additional and separate consideration by the Court.

### 4. The Possibility of a Dispute Concerning Material Facts

Where, as here, the defendant defaults by refusing to answer and defend, the allegations in the well-pleaded complaint are presumed true and, as such, there is no possible dispute of material facts. See United States v. D&P Prods., 2019 U.S. Dist. Lexis 98910 at *9 (E.D. Cal. 2019). This factor weighs in favor of granting Plaintiffs' motion.

///

### 5. Whether Default was Due to Excusable Neglect

This factor is neutral. Plaintiffs do not address this factor in their motion. The record does show, however, that Defendant Witt was personally served with both the pleadings at issue in this case, as well as the instant motion, and that he has refused delivery of Court orders in this case.

### 6. Policy Favoring Decisions on the Merits

While dispositions on the merits are favored, such dispositions are impossible when a defendant defaults by refusing to appear and defend. See Johnson v. Pizano, 2019 U.S. Dist. Lexis 101084, *13 (E.D. Cal. 2019). This factor weighs in favor of granting Plaintiffs' motion.

**B. Damages**

Plaintiffs seek a total of $3,000,000.00 in damages ($1,000,000.00 for each minor plaintiff) by way of default judgment. See ECF No. 57-1, pg. 5-7. According to Plaintiffs: "The blend of economic, non-economic, and punitive damages here justify [sic] an award of $3 Million, with $1 Million for each minor." Id. at 7. Following an initial hearing on Plaintiffs' motion for default judgment held on June 2, 2021, the matter was set for an evidentiary hearing on June 24, 2021, at which time the Court accepted testimony from Beverly Cramblit. Plaintiffs' Exhibits A and B were lodged with the Court under seal.

The Court finds that Plaintiffs showing as to economic damages is not compelling, as the evidence of the Decedent's income is entirely speculative. Plaintiffs acknowledge that Ms. Cramblit was not working at the time of the events at issue and did not intend to begin working until some undetermined date when the children were older and presumably less in need of their mother's attention and resources. The evidence offered as to the amount of Decedent's projected income was not supported by expert opinion and appears to be a projected estimate adjusted by a randomly selected percentage.

As to the noneconomic damages, the Court finds that the proffered evidence of the familial relationship between the decedent and the three minor children is conflicting. The testimony of Beverly Cramblit suggested a close relationship, in which the children's mother

dedicated her attentions to the children and prioritized them over career and other interests. Notwithstanding, the evidence also shows that the Decedent left her children for a period of days while accompanying the Defendant to the Chill property, during which time she had no communications with the minor children. This extended period of absence from her children included a period when the Decedent was at a hospital and allegedly utilizing a cell phone. Yet no persuasive evidence was offered to suggest that Decedent sought to communicate with her minor children or even to confirm their status. When released from the hospital, the Decedent elected to return to the Chill property, rather than rejoin her children. The evidence before the court with regard to these events offers no credible explanation for such actions, even in the face of the Defendant's alleged threats. Decedent's acts and omissions do not comport with the close mother/child relationship now asserted by the Plaintiffs.

However, it is undisputed that by virtue of the willful and oppressive acts of Defendant, the Plaintiffs, each of a young age at the time of these events, were denied any further relationship with their mother. While no sum can compensate for this loss, it is this Court's finding that damages are appropriately awarded non-economic damages against Defendant here, where the Defendant presented no opposition to the operative complaint or the pending motion.

No evidence is before the Court as to a basis for calculating punitive damages, and no such damages will be awarded here.

### IV. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Plaintiffs' motion for a default judgment, ECF No. 57, be granted; and
2. Plaintiffs be awarded damages in the total amount of $1,150,000, divided equally between the three minor Plaintiffs and calculated as follows:

| | |
|---|---|
| Economic damages: | $150,000 |
| Non-Economic damages: | $1,000,000 |
| Punitive Damages: | $ 0 |

These findings and recommendations are submitted to the United States District

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 1, 2021

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE